1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICKY PATU,

                    Plaintiff,

    v.

SHERYL ALBERT, et al.,

                    Defendants.

Case No. 15-722 RSM-BAT

**REPORT AND
RECOMMENDATION**

       Ricky Patu is presently confined at the Monroe Correctional Complex-SOU (MCC-SOU).  In his pro se complaint he alleged his civil rights were violated by several MCC-SOU medical providers.  The Court declined to serve Mr. Patu's complaint because it failed to state a claim under § 1983 but granted leave to amend.  Dkt. 9.  Mr. Patu filed an amended complaint.  Dkt. 10.  The Court recommends that the amended complaint be dismissed without prejudice as it fails to state a claim upon which relief can be granted and it is clear that no amendment can cure the defect.

## BACKGROUND

      In his original complaint, Mr. Patu purported to sue Sheryl Albert ARNP, Martha Schrader RN, and Barbara Stanton ARNP.  He alleged that on September 17, 2013, he was

REPORT AND RECOMMENDATION - 1

1  feeling "sick and dizzy" but Barbara Stanton refused to admit him to the infirmary.  He states

2  that he found a hair in his food and was given a new tray.  "About a month later" he claims he

3  had the "same issue" and Sheryl Albert and Barbara Stanton refused to admit him to the

4  infirmary.  He asserted no allegations against Martha Schrader.  Dkt. 8.

5          Attachments to Mr. Patu's complaint indicate that he complained of his lunch tray on

6  June 9, 2011 because he believed his soup was contaminated with poison or something that made

7  his soup taste bad.  Dkt. 8, p. 10.  Excerpts from his medical records reflect that he was seen on

8  September 11, 2013 by B. Stanton, ARNP for complaints of constipation and headaches and was

9  given medication.  He was seen again on September 17, 2013 for complaints of nausea and

10  diarrhea.  He also reported that he had thrown up his dinner because there was a hair in his food.

11  He was advised to refrain from abruptly stopping his medication and to follow-up with medical

12  if his symptoms worsened.  Dkt. 8, p. 12. Excerpts from his medical records reflect that he was

13  seen again on September 18, 2013 by B. Stanton, ARNP, for a follow-up on his complaints of

14  constipation and again on September 20, 2013, with continued complaints of constipation.  A

15  notation by LPN M. Sloan on Mr. Patu's medical records states:  "Advise him we have

16  metamucel for [indecipherable].  I will see him if he continues to refuse meds.  *Id.*, at 7.

17          The Court declined to serve the complaint because Mr. Patu failed to state a viable Eighth

18  Amendment claim against any of the named defendants.  Mr. Patu alleged only that Nurses

19  Albert and Stanton refused to admit him to the infirmary when he felt "dizzy and sick" on two

20  occasions and that the sickness was related to finding a hair in his food.  He asserted no factual

21  allegations as to Martha Schrader.

22          In his amended complaint, Mr. Patu omits Martha Schrader as a defendant but provides

23  even less factual allegations against Sheryl Albert and Barbara Stanton than he did in his

REPORT AND RECOMMENDATION - 2

1   deficient original complaint.  In his amended complaint, Mr. Patu states that Sheryl Albert knew

2   about his chronic constipation for ten years and that she was deliberately indifferent to his

3   medical needs because she saw him a full month after he complained of feeling sick and dizzy.

4   Mr. Patu references kites relating to his claim but none are attached to his amended complaint.

5   Mr. Patu alleges that Barbara Stanton was aware that he had been sick and throwing up but failed

6   to admit him to the infirmary.  He claims that this occurred on September 17, 2014.  Dkt. 10, at

7   3.

8                                                    **DISCUSSION**

9          In order to sustain a civil rights action under § 1983, a plaintiff must show (1) that he

10   suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

11   that the violation was proximately caused by a person acting under color of state or federal law.

12   *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

13         The government has an obligation to provide medical care for prisoners.  The Eighth

14   Amendment proscribes deliberate indifference to a prisoner's serious medical needs.  *Estelle v.*

15   *Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  To establish "deliberate

16   indifference," a prisoner must show that a defendant purposefully ignored or failed to respond to

17   the prisoner's pain or possible medical need.  *Id*. at 104.  A determination of "deliberate

18   indifference" involves an examination of two elements: (1) the seriousness of the prisoner's

19   medical need; and (2) the nature of the defendant's response to that need.  *McGuckin v. Smith*,

20   974 F.2d 1050, 1059 (9th Cir.1992).

21         Mere negligence in diagnosing or treating a medical condition, without more, does not

22   violate a prisoner's Eighth Amendment rights.  *Hutchinson v. United States*, 838 F.2d 390, 394

23   (9th Cir.1988).  Further, a prisoner can make no claim for deliberate medical indifference unless

REPORT AND RECOMMENDATION - 3

1  the denial was harmful.  *McGuckin*, 974 F.2d at 1060; *Shapely v. Nevada Bd. of State Prison*

2  *Comm'rs.*, 766 F.2d 404, 407 (9th Cir.1985).

3        Mr. Patu alleges only that Nurses Albert and Stanton refused to admit him to the

4  infirmary when he felt "dizzy and sick" on September 17, 2014 even though Nurse Albert had

5  known for ten years that Mr. Patu suffers from chronic constipation.  Mr. Patu fails to allege a

6  serious medical need, that any of the defendants were deliberately indifferent to that need, and

7  that he suffered any harm.  At most, Mr. Patu has alleged a general disagreement with the

8  treatment he received because he was not admitted to the infirmary.  However, a plaintiff cannot

9  succeed on the merits based on the defendants' negligence or his own general disagreement with

10  the treatment he has received.  *Estelle*, 429 U.S. at 106; *Hutchinson v. United States*, 838 F.2d

11  390, 394 (9th Cir.1988); *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir.1996).

12  **CONCLUSION**

13        Where a pro se litigant's complaint fails to state a claim upon which relief can be granted,

14  the Court generally grants him the opportunity to amend the complaint.  *Lucas v. Dep't of*

15  *Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).  However, the Court may deny leave

16  to amend if "it is absolutely clear that no amendment can cure the defect."  *Id*.  Here, Mr. Patu

17  was given an opportunity to amend his complaint but has failed to allege facts giving rise to a §

18  1983 action.

19        The Court recommends that Plaintiff's § 1983 action be **DISMISSED without**

20  **prejudice.**   A proposed order accompanies this Report and Recommendation.  Any objections to

21  this Recommendation must be filed by **Wednesday, July 15, 2015.**  The Clerk should note the

22  matter for **Friday, July 17, 2015**, as ready for the District Judge's consideration if no objection

23  is filed.  If Plaintiff files an objection, he must note the matter for the Court's consideration 14

REPORT AND RECOMMENDATION - 4

1   days from the date the objection is filed and served.  Objections shall not exceed seven (7) pages.

2   The failure to timely object may affect the right to appeal.

3          The Clerk shall provide a copy of this Report and Recommendation to Plaintiff and to the

4   Honorable Ricardo S. Martinez.

5          DATED this   25th   day of June, 2015.

6          _____

7          BRIAN A. TSUCHIDA
           United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 5